UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CHARLES HENDRICKS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16 CV 30 DDN |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before this court for judicial review of the final decision of the Commissioner of Social Security finding that plaintiff Charles Hendricks, Jr., is not disabled and, thus, not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate judge pursuant to 28 U.S.C. §§ 636(c). For the reasons set forth below, the final decision of the Commissioner is reversed and the case is remanded to the Commissioner..

## I.  BACKGROUND

Plaintiff was born on August 24, 1974. (Tr. 205). He protectively filed his application for DIB on April 12, 2013, alleging a disability onset date of January 26, 2013. (Tr. 11, 205). Plaintiff claimed that the following conditions limited his ability to work: "bipolar, neuropathy, glaucoma, gout, pain syndrome," and diabetes. (Tr. 240). Plaintiff's application was denied on September 6, 2013, and he requested a hearing before an administrative law judge ("ALJ"). (Tr. 11, 149-55). A video hearing was held in August 2014, where plaintiff and a vocational expert ("VE") testified. (Tr. 34-77). By decision dated October 23, 2014, the ALJ found that plaintiff was not disabled under the

Social Security Act. (Tr. 8-21). The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform jobs available in the national economy. (Tr. 13-21). On December 18, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-6). Consequently, the ALJ's decision stands as the final decision of the Commissioner.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence, in that the ALJ improperly evaluated the medical opinions and failed to perform a proper credibility analysis of plaintiff's testimony. Specifically, plaintiff alleges that the ALJ erred in discounting the opinions of treating and consulting examiners Nurse Horn, Nurse Hampton, and Dr. Rau, while giving the opinion of non-examining consultant Dr. Brandhorst some weight. (Tr. 18-19). He also argues that if the ALJ properly assessed the relative weight given to the opinions, there was insufficient evidence in the record from which the ALJ could determine plaintiff's RFC. Finally, plaintiff claims the ALJ's analysis of plaintiff's credibility improperly ignored the *Polaski* factors, including plaintiff's work history. *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). Plaintiff asks that the ALJ's decision be reversed and the case remanded for a new administrative hearing.

### A. Medical Record and Evidentiary Hearing

The court adopts plaintiff's unopposed statement of facts (ECF No. 12), as well as defendant's unopposed statement of facts. (ECF No. 17). These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. The court will discuss specific facts as they relate to the parties' arguments.

### B. ALJ's Decision

The ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 26, 2014. (Tr. 13). He also found that plaintiff suffered from the severe impairments of lumbar facet syndrome, degenerative disc disease of the

lumbar spine, diabetes mellitus, hypertension, cardiomyopathy, congestive heart failure, peripheral neuropathy, arthralgia, fibromyalgia, venous insufficiencies, dyslipidemia, obstructive sleep apnea, morbid obesity, and bipolar disorder. *Id.* The ALJ concluded that none of these impairments, individually or in combination, met or equaled an impairment listed in the Commissioner's list of presumptively disabling impairments. (Tr. 14-15). With respect to plaintiff's mental impairment, the ALJ found that the "paragraph B" criteria were not met, because plaintiff had only mild restrictions in activities of daily living; moderate restrictions in social functioning and with regard to concentration, persistence, or pace; and no extended episodes of decompensation. *Id.*

The ALJ found that plaintiff's impairments left him with the RFC to "perform light work as defined in 20 C.F.R. 404.1567(b)," except that he cannot climb ladders, ropes, or scaffolds, although he can occasionally climb ramps or stairs. (Tr. 16). The ALJ also found that plaintiff's mental RFC was limited to "only simple tasks that do not involve more than occasional interaction with the general public, supervisors and coworkers." *Id.* The ALJ found that plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms "were not entirely credible." *Id.*

The ALJ reasoned that plaintiff's medical records, conservative treatment history, and good response to medication supported limitations only to the extent described in the RFC. *Id.* Specifically, the ALJ described plaintiff's hearing testimony, noting that he testified he can lift 20 pounds comfortably, can stand for 20 minutes, cannot sit for long periods, gets frustrated easily when interacting with other people, can walk up to a mile per day on a treadmill and is able to do light chores, needs his wife to accompany him to the grocery store, and has difficulty concentrating. *Id.* The ALJ noted that plaintiff's physical examinations consistently show benign or normal findings and his heart and sleeping problems were successfully treated. *Id.* at 16-17. The ALJ also considered plaintiff's activities of daily living "suggest he is capable of more than he alleges." *Id.* at 17. Plaintiff stated in his functional report that he does the dishes, cleans the house,

prepares meals, sweeps, vacuums, and does outdoor chores like trimming and edging. (Tr. 17, 250-60). Finally, the ALJ pointed out that plaintiff's mental condition "does have brief exacerbations, but overall, his condition is relatively stable with medication." (Tr. 18). He observed that plaintiff's bipolar disorder affects his ability to perform basic work activities to the extent described in the RFC, but plaintiff's ability to do household chores, use a computer, read the news, and care for his cats belie the severity of his alleged limitations. (Tr. 18, 250-60).

In terms of the medical opinions in the record, the ALJ explained that he gave "some weight" to state agency psychological consultant Dr. Scott Brandhorst, Psy.D. because his opinion was "consistent with the objective medical evidence, the claimant's course of treatment and the claimant's documented good response to treatment." *Id.* In the state disability determination explanation, the consultant noted that while plaintiff complained of mental health issues, mental status exams produced few abnormalities. (Tr. 18, 99-115). The ALJ found the consultants' limitations to be consistent with plaintiff's history of normal findings and conservative treatment. (Tr. 18). He gave it only "some weight" because the consultants opined plaintiff needed "moderate social limits" without further explanation. (Tr. 18, 99-115).

The ALJ gave Dr. Debra Rau's opinion "little weight" because it was not supported by the medical evidence. (Tr. 18). Dr. Rau opined that plaintiff's mental condition would seriously interfere with plaintiff's ability to concentrate, interact with others, and understand and remember instructions. (Tr. 409-12). The ALJ found that this did not comport with the medical evidence, plaintiff's conservative treatment history, and his good response to treatment. (Tr. 18). Specifically, plaintiff reported he has no problem following written instruction, and plaintiff's mental status exams showed normal findings with only moderate anxiety. (Tr. 18-19, 250-60, 350-64, 405). Occasional bouts of poor judgment or obsessive behavior were treated conservatively with medication and counseling, and plaintiff was able to do simple arithmetic without difficulty. *Id.* The ALJ further found that Dr. Rau's opinion was inconsistent with her own examination. During plaintiff's interview with Dr. Rau, she noted he was alert, made normal

4

movements, made good eye contact, had no specific short-term memory difficulties, had fairly-organized thought processes, and was able to follow simple instructions. (Tr. 19, 409, 12). She assigned him a Global Assessment of Functioning ("GAF") score[1] of 52, which suggests only moderate restrictions. *Id.*

The ALJ also gave the opinions from the nurse practitioners little weight because he did not find them supported by the medical evidence. (Tr. 19). The ALJ found Nurse Wanda Horn's opinion, indicating plaintiff had marked and extreme mental limitations, to be inconsistent with plaintiff's treatment records. (Tr. 19, 308-9). The ALJ found Nurse Leigh Hampton's opinion, indicating plaintiff had mostly moderate and marked limitations, to be inconsistent with plaintiff's treatment records showing only minor abnormalities on examination and conservative treatment with medication. (Tr. 19, 350-64, 405). The ALJ also noted that it did not appear that Nurse Hampton ever treated plaintiff for mental issues, as her records focus on plaintiff's diabetes and nutrition and note that he was seeing another nurse practitioner for emotional management. (Tr. 19, 316-46).

Finally, the ALJ relied on the testimony of the VE to find that there were jobs in significant numbers in the national economy that a person with plaintiff's RFC and age, education, and work experience could perform. (Tr. 20-21). Accordingly, the ALJ concluded that plaintiff was not disabled.

---

[1] A GAF score represents a clinician's judgment of an individual's overall ability to function in social or occupational settings, not including impairments due to physical or environmental limitations. *Diagnostic & Statistical Manual of Mental Disorders* (4th ed.) (DSM-IV) at 32. GAF scores of 31-40 indicate some impairment in reality testing or communication or "major" impairment in social or occupational functioning; scores of 41 to 50 reflect "serious" impairment in these functional areas; scores of 51-60 reflect "moderate" impairment; and scores of 61 to 70 indicate "mild" impairment. However, in the fifth edition of the DSM, it was recommended that the GAF be dropped for several reasons, including its conceptual lack of clarity and questionable psychometrics. DSM-5 at 16.

## II. **DISCUSSION**

Plaintiff argues that the ALJ erred by discrediting the opinions of the treating and consulting examiners while giving some weight to the non-examining consultant's opinion, had insufficient evidence to determine plaintiff's RFC, and failed to consider plaintiff's subjective complaints under the standards set forth in *Polaski*. The court agrees that the ALJ failed to fully develop the record and had insufficient evidence to determine plaintiff's RFC. It reverses and remands the action on this ground for further development of the record.

### A. **General Legal Principles**

In reviewing the denial of Social Security disability benefits, the court's role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).

To be entitled to disability benefits, a claimant must prove that he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in a death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 CFR § 404.1520(a)(4); *see also Pate-Fires*, 564 F.3d at 942 (describing the five-step process).

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). *Id.* § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

### B. <u>Opinion Evidence Weight and Sufficiency</u>

The ALJ discounted three medical opinions favorable to the plaintiff and gave some weight to an unfavorable medical opinion. (Tr. 18-19). An ALJ must give good reasons for the weight he gives the opinions. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Legitimate factors for evaluating opinion evidence include the relationship between the treating source and the claimant, including the length, nature, and extent of examination; the degree to which the source presents an explanation and evidence to support an opinion; how consistent the opinion is with the record as a whole; and the training and expertise of the source. *See* SSR 06-3p (informally applying the principles in 20 C.F.R. 404.1527(b) and 416.927(b) to all opinion evidence and not only medical opinions from "acceptable medical sources"). For example, a treating physician's opinion will generally be given controlling weight if it is supported by medically acceptable evidence and is consistent with the record. *Andrews*, 791 F.3d at 928. However, it "may be discounted or entirely disregarded where other medical assessments are supported by better or more thorough medical evidence." *Id.* Similarly, when a source's examination notes are inconsistent with his or her opinion, the ALJ may decline

7

to give that source controlling weight. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). Furthermore, checkmarks on a form "are conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record." *Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011).

Plaintiff first argues that the ALJ failed to properly consider the opinions of his treating nurse practitioners, Nurses Horn and Hampton. This court concludes that the ALJ gave valid reasons for discounting the nurse practitioners' opinions. Under SSR 06-3p, the opinions of nurse practitioners are not "acceptable medical sources." *See also* 20 C.F.R. § 404.1513(a)(explaining that an acceptable medical source is a licensed physician, psychologist, optometrist, podiatrist, or speech-language pathologist). This means that Nurses Horn and Hampton cannot establish the existence of a medically determinable impairment, serve as a medical expert, or be considered a treating source whose medical opinions may be entitled to controlling weight. SSR 06-3p. However, these opinions may serve as "other sources" to provide insight into the severity of an impairment and how it affects a claimant's ability to function. *Id.*

Nurse Horn's July 2013 opinion indicated plaintiff had marked and extreme mental limitations. (Tr. 308-09). As the ALJ found, those opinions contradict the other medical evidence, plaintiff's conservative treatment history, and plaintiff's good response to treatment. (Tr. 250-60, 350-64, 405). Moreover, Nurse Horn's opinion is a two-page form consisting solely of check-marked boxes with no explanations. (Tr. 308-09). *See Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010) (finding that a checklist form that cites no medical evidence and provides little to no elaboration is conclusory and has only limited evidentiary value).

Nurse Horn's mental status reports state that plaintiff dresses appropriately; maintains good eye contact; speaks moderately with goal-directed content; is cooperative; has a calm affect; is a fair historian with intact memory; has fair insight, judgment, and impulse control; and has average intellect. (Tr. 378). Her notes also indicate that with medical management plaintiff's moods became more stable, he did not feel as "blah" or "bouncing off the walls," and he became calm with decreased anger. (Tr. 371-74, 405).

*See Hacker v. Barnhart,* 459 F.3d 934, 937 (8th Cir. 2006) (noting the Eighth Circuit has declined "to give controlling weight to the treating [source]'s opinion because the treating [source]'s notes were inconsistent with her . . . assessment").

While it is true that, as a psychiatric-mental health nurse practitioner, Nurse Horn has special training, and while there may also be evidence in the record to support giving her opinion greater weight (*e.g.*, her six months of treatment notes documenting plaintiff's anxiety, hallucinations, and depression) (Tr. 365-79; 403-05), the court may not reverse "merely because substantial evidence would support a contrary outcome." *Johnson*, 628 F.3d at 992. The question is whether the record contains evidence that a reasonable mind might accept as adequate to support his conclusion to discredit Nurse Horn's opinion. *Id.* This court finds that there is.

The second opinion at issue, Nurse Hampton's May 2013 opinion, indicated plaintiff had mostly moderate and marked limitations. (Tr. 391-92). The ALJ similarly found this opinion to be inconsistent with the other medical evidence, plaintiff's conservative treatment history, and plaintiff's good response to treatment. (Tr. 19). As the ALJ noted, Nurse Hampton's treatment notes mostly discuss plaintiff's nutrition and diabetes. (Tr. 323, 325, 329-46, 442-52, 564-70). She does not appear to have special expertise in mental health treatment, nor, for that matter, to have provided significant mental health treatment for plaintiff. (Tr. 19). It appears that as soon as Nurse Hampton determined that plaintiff might have emotional needs, she referred him to Nurse Horn, a mental health nurse practitioner. (Tr. 336-39).

On two occasions, Nurse Hampton prescribed plaintiff medication for his mental impairments: Lithobid in February 2013 for plaintiff's bipolar disorder and Zoloft in May 2013 for his depression and anxiety. (Tr. 339, 445). Of the remaining nine months' worth of treatment notes, from December 2012 to August 2013, the only other statements that related to plaintiff's mental health are plaintiff's own complaints and Nurse Horn's observations of plaintiff's demeanor. These notes state that plaintiff complained of anxiety and depression, but Nurse Horn noted that he was "alert and cooperative," with a

normal attention span and concentration and no suicidal or homicidal thoughts. (Tr. 337-38, 443-44, 565-66). His mood and affect ranged from normal to flat to depressed. *Id.*

Nurse Hampton's opinion, meanwhile, reaches far beyond her limited treatment of plaintiff's mental health. She evaluates plaintiff's ability to perform twenty detailed mental activities within a number of categories, including his understanding and memory, his ability to sustain concentration and persistence, his ability to adapt, and his social interaction capabilities. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (concluding that an ALJ lawfully discounted a treating physician's opinion that included significant impairments and limitations that were absent from his treatment notes and the plaintiff's medical records).

Having reviewed the record and the ALJ's reasoning, this court finds that the ALJ provided sufficient reasons for the weight he gave Nurse Hampton's opinion, and this weight was supported by substantial evidence on the record as a whole. He found Nurse Hampton's opinions to be inconsistent with plaintiff's treatment records showing only minor abnormalities on examination and conservative treatment with medication. (Tr. 19, 405, 444, 470, 472, 512-30, 538, 542-43, 547, 554, 559, 566). He noted that as a nurse practitioner her opinion was not an acceptable medical source under SSR 06-3p. Furthermore, like Nurse Horn's opinion, Nurse Hampton's opinion is only a two-page form consisting solely of check-marked boxes with no explanations. (Tr. 391-92). *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). Accordingly, the weight the ALJ accorded to Nurse Hampton's opinion was not error.

As to the third opinion at issue, plaintiff also argues that the ALJ failed to properly weigh the opinion of Dr. Rau, who, as a consulting examiner for the state, performed a comprehensive psychological examination of plaintiff in July 2013. (Tr. 409-12). Dr. Rau opined that plaintiff's medical conditions would seriously interfere with his ability to understand and remember instructions, concentrate, and interact with others. (Tr. 411-12). The ALJ gave this opinion little weight because he found it to be at odds with "the longitudinal evidence of record." (Tr. 18). The ALJ noted, for example, that plaintiff reported he can generally follow written instructions. (Tr. 255). *See Whitman v. Colvin*,

762 F.3d 701, 706-07 (8th Cir. 2014) (explaining that an ALJ may properly discount the opinion of a medical source when it is inconsistent with a claimant's own description of his functional limitations).

The record shows Dr. Rau's assessment was based largely on plaintiff's subjective complaints as opposed to clinical and laboratory diagnostic techniques. *See Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005). The ALJ found that Dr. Rau's own medical assessment did not support the more extreme limitations she suggested. (Tr. 18-19, 409-12). As the ALJ noted, Dr. Rau's examination revealed largely normal findings: plaintiff did have an anxious mood, but he was alert, oriented to time and place, could do simple arithmetic without difficulty, made normal movements, and made good eye contact. *Id.* Dr. Rau noted plaintiff was able to follow simple instructions and had fairly organized thought processes. *Id.* She only recommended medication and outpatient counseling to manage plaintiff's psychological symptoms. (Tr. 411). Furthermore, Dr. Rau assigned plaintiff a GAF score of 52, which suggests only moderate restrictions—not extreme ones. *Id.*

The ALJ also noted that most of the other mental status examinations in the record reveal only minor abnormalities, like the occasional notation of anxiety, poor judgment, or obsessive behavior, all of which were treated conservatively with medication and counseling. (Tr. 18-19, 405, 444, 470, 472, 512-34, 538, 543). An ALJ may lawfully discount an opinion if it is inconsistent with other evidence in the record. *See, e.g., Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). The ALJ provided good reasons here for discounting Dr. Rau's opinion, as he noted it was inconsistent with plaintiff's conservative treatment history, the objective findings of other mental examinations, plaintiff's good response to treatment, and plaintiff's own report of his functional limitations.

In addition to arguing that the ALJ gave certain medical opinions too little weight, plaintiff also asserts that the ALJ gave the fourth opinion in the record, Dr. Brandhorst's opinion, too much weight. Dr. Brandhorst, Psy.D. is a state agency psychological consultant who reviewed plaintiff's file. (Tr. 18, 99-115). ALJs are to consider findings

of state agency psychological consultants as opinion evidence. 20 C.F.R. § 404.1527(e)(2)(i). These opinions may, "in appropriate circumstances," be entitled to greater weight than treating or examining source opinions. SSR 96-6p.

As the ALJ observed, Dr. Brandhorst's September 2013 opinion noted that plaintiff had complaints of mental health issues, but that his mental status examinations produced few abnormalities. (Tr. 18, 107, 352-64, 405, 444). The ALJ concluded that Dr. Brandhorst's summary was consistent with the medical evidence showing normal examinations with some anxiety. *Id.* Based on his review of the available records, including the opinions of Dr. Rau and Nurses Horn and Hampton, Dr. Brandhorst opined that plaintiff retained the capacity to understand, remember, and carry out simple tasks on a sustained basis. (Tr. 18, 107, 111). The ALJ only accorded the opinion some weight, because Dr. Brandhorst failed to explain why he considered plaintiff to have moderate social limits.[2] (Tr. 18, 107, 112). Even so, the ALJ found Dr. Brandhorst's opinion consistent with plaintiff's history of normal mental findings, his course of treatment, and his documented good response to treatment. (Tr. 18). The court finds the ALJ provided sufficient reasons to accord Dr. Brandhorst's opinion some weight.

This is not the end of the analysis, however. Plaintiff further argues that even if the ALJ properly weighed the opinions, there was insufficient evidence for him to determine plaintiff's RFC. He directs the court to *Nevland v. Apfel*, where the Eighth Circuit reversed an ALJ's decision because it relied on the opinions of non-treating, non-examining physicians in determining a plaintiff's RFC. 204 F.3d 853, 857-58 (8th Cir. 2000). The *Nevland* court held that the Commissioner's burden at Step Five is generally not met with the opinions of non-treating, non-examining physicians. *Id.* The Eighth Circuit has subsequently clarified that a non-examining physician's opinion may constitute sufficient evidence at Step Four, when the claimant has the burden to prove he cannot do past relevant work. *See, e.g., Eichelberger v. Barnhart,* 390 F.3d 584, 591 (8th Cir.2004); *Masterson v. Barnhart,* 363 F.3d 731, 737–39 (8th Cir. 2004). However, it is

---

[2] The ALJ addressed plaintiff's social limitations in the RFC based on other medical evidence. (Tr. 18).

still generally insufficient at Step Five, where the Commissioner must prove that the claimant retains the RFC to do other kinds of work existing in the national economy. Once an ALJ has determined that a claimant is incapable of performing past work, the ALJ may not rely solely on the opinion of a non-treating, non-examining physician who reviewed the reports of treating physicians, nor may the ALJ draw upon his own inferences from medical reports. *Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000) (citing *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975)).

The ALJ appears to have done both here. Other than the medical opinions of Drs. Rau and Brandhorst and Nurses Horn and Hampton, there is no medical evidence in the record on how plaintiff's impairments affect his ability to function in the workplace. As in *Nevland*, there are "numerous treatment notes" as to plaintiff's impairments in the record, but, after discounting the opinions of Nurses Hampton and Horn and Dr. Rau, there are few to no comments on plaintiff's ability to function in the workplace. *Nevland*, 204 F.3d at 858. While plaintiff's impairments prevent him from doing past work, it is unclear how his impairments affect his RFC to do other work. The ALJ should have ordered consultative examinations to assess plaintiff's mental and physical RFC. *See id.* The case is remanded to the ALJ for further development of the record.

### III. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is reversed and remanded for further proceedings. An appropriate Judgment Order is issued herewith.

      /S/ David D. Noce      
UNITED STATES MAGISTRATE JUDGE

Signed on January 18, 2017.